

**Signed September 06, 2019.**

_____
Ronald B. King
**Chief United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JORGE R. ALFONSO AND | § | CASE NO. 16-51448-RBK |
| NAYDIMAR DIAZ, | § | |
| | § | |
| | § | |
| DEBTORS | § | CHAPTER 7 |

### OPINION

At issue is whether this Court should approve the chapter 7 trustee's proposed settlement of a personal injury claim against a co-debtor's employer arising out of an injury suffered by the co-debtor during the course of her employment. Because the Court finds that the settlement is not "fair and equitable" as required by cases interpreting Rule 9019, the Court will deny the *Joint Motion Under Fed. R. Bankr. P. 9019(a) to Approve Compromise and Settlement* (ECF No. 35).

### I. Jurisdiction, Authority, and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This matter arises under the Bankruptcy Code in a bankruptcy case referred to this Court by the

Standing Order of Reference in this district. This matter is a core proceeding under § 157(b)(2)(B) and (O). Venue is proper under §§ 1408 and 1409. The Court has authority to enter a final order under § 157(b)(1). This Opinion will constitute the Court's findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052 and 9014.

## II. Factual Overview

On June 29, 2016 (the "Petition Date"), Jorge R. Alfonso and Naydimar Diaz (the "Debtors") filed a petition under chapter 7, along with schedules and a statement of financial affairs, initiating their bankruptcy case in this Court. ECF No. 1. On August 25, 2016, the trustee filed a no-asset report. On October 6 and 7, 2016, the Debtors received their chapter 7 discharge and the case was closed. *See* ECF Nos. 13, 14. Between the Petition Date and the closing of their case, the Debtors did not mention, either in the petition, schedules, SOFA, or in a meeting or hearing before this Court, any possible pre-petition claim against the employer, Nordstrom, Inc.[1]

*a. The State Court Case*

Meanwhile, on September 8, 2016, Debtor Ms. Diaz retained Daniel Ross and his firm, Ross Scalise Law Group (the "Firm"), to pursue potential workplace injury claims against Ms. Diaz's employer, Nordstrom, arising out of injuries sustained as a result of a "slip and fall" on Nordstrom's premises on October 30, 2015—making it a pre-petition claim based on a pre-petition injury (the "Nordstrom Claim" or "Claim"). As part of the Firm's standard diligence, Mr. Ross ran a background check of Ms. Diaz on a Westlaw program called "PeopleMap." According to Mr. Ross's Declaration (Firm Ex. A, p. 2), the PeopleMap search returned no indication of a bankruptcy filing by Ms. Diaz. *See* Firm Ex. C, p. 114. Then, without knowledge of a bankruptcy

---

[1] The filed lawsuit also named Simon Property Group Texas L.P. and Simon Management Associates Texas LLC as defendants. For present purposes, "Nordstrom" and "Settling Defendants" will be used to represent the collective group of defendants who are parties to the proposed settlement.

case in this Court, Mr. Ross accepted the engagement and executed a retention agreement with Ms. Diaz to pursue claims against Nordstrom. *See* Firm Ex. B. In the formal engagement agreement, the Firm and Ms. Diaz agreed to a 38–45% contingency fee, based on the need for trial and appeal. *See id.* at 1. After the Petition Date, Mr. Ross arranged medical care for Ms. Diaz, which included major back and neck surgery and attendant scar reconstruction. *See* ECF No. 44, p. 3. Ms. Diaz, in total, incurred $367,828.87 in post-petition medical expenses, all of which allegedly treated pre-petition injuries from the slip and fall. *See id.* All but $3,511.23 of those expenses were incurred under "letters of protection" wherein the Firm promised healthcare providers first-priority to any recovery from the Nordstrom Claim (after the Firm's fees and expenses). *See id.*

Mr. Ross, on behalf of Ms. Diaz, then filed a lawsuit against Nordstrom in Travis County state court. Pursuant to a binding arbitration provision in Nordstrom's employee agreement with Ms. Diaz, the case was eventually referred to arbitration. *See* Firm Ex. D; E; F, p. 3. Importantly, Ms. Diaz did not disclose retention of Mr. Ross to her bankruptcy attorney, the trustee, or the Court; nor did she disclose to Mr. Ross or to Nordstrom that she was a debtor in a pending bankruptcy case.

During arbitration, Nordstrom became aware of Ms. Diaz's pending bankruptcy case and immediately moved to dismiss the personal injury case, asserting that Ms. Diaz lacked standing to pursue the pre-petition claim. ECF No. 35, p. 3. Based on what he stated in his proffer and Declaration, Mr. Ross likewise did not become aware of the bankruptcy case until Nordstrom filed its motion to dismiss. Firm Ex. A, p. 2. Mr. Ross then contacted the trustee, who moved to reopen the bankruptcy case on August 24, 2018. *See* ECF Nos. 16, 19. After the case was reopened, the

Debtors filed their *Amended Schedules and Summary*,² which disclosed, for the first time in the bankruptcy case, the existence of a pre-petition claim by Ms. Diaz against Nordstrom and the other Defendants. *See* ECF No. 27. Therein, Ms. Diaz also claimed a portion of the Nordstrom Claim—$23,675.00—as exempt. *See id.* (citing 11 U.S.C. § 522(d)(11)(D)).

    *b. Litigation Regarding the Claim in Bankruptcy*

At first, the trustee objected to Debtors' claim of exemption for a portion of the claim, arguing that Debtors' failure to schedule it before receiving their discharge should bar a subsequent attempt to exempt it. *See* ECF No. 29, p. 3 (citing ***In re Benjamin***, 580 B.R. 115 (Bankr. D. N.J. 2018) and FED. R. BANKR. P. 9006(b)(1)). After hearings on the matter, however, the trustee withdrew his objection to the exemption and conceded that Debtors can claim $23,675.00 as exempt under § 522(d)(11)(D). *See* ECF No. 62. Thus, no party currently disputes that (1) Ms. Diaz is entitled to exempt the first $23,675.00 of any recovery from the Nordstrom Claim, and (2) some portion of the Claim belongs to the estate as non-exempt property. *See* § 541(a)(1).

At least initially, the trustee, the Debtors, and the Firm agreed on a course of action: the trustee would retain the Firm to represent the estate in pursuing the Nordstrom Claim. *See* ECF No. 44, pp. 6–8; Firm Ex. F–Q. The trustee proposed the following contingency fee arrangement to compensate the Firm for the representation and pay post-petition medical creditors: (a) the Firm would receive 50% of the first $100,000 recovered on the Claim, which the Firm would use to pay, in the following order, (i) the Firm's incurred expenses, (ii) the Firm's attorneys' fees, and (iii) certain medical expenses incurred by Ms. Diaz on or after June 29, 2016; (b) the Firm would receive 40% of any recovery over $100,000, with the estate receiving the other 60% for the benefit

---

² Debtors amended their schedules twice after the case was reopened—initially claiming $47,350.00 as exempt, then reducing that claimed exemption to $23,675.00 to reflect that the exemption was claimed by one Debtor (Ms. Diaz) as opposed to both Debtors.

of creditors; and (c) if the estate recovered enough from the Nordstrom Claim to pay all creditors in full, the remainder of the recovery would be paid to the Debtors. *See* Firm Ex. K, p. 2.[3]

After the case was reopened, the trustee and the Firm initially appeared optimistic that this arrangement ensured the best recovery for creditors, the Firm, and post-petition medical providers. *See* Firm Ex. K, p. 1. In an email to the Firm in March 2019, trustee's counsel wrote "[w]e hope that this [retention arrangement] presents a framework within which we can move forward." *Id.*

That optimism waned, however, when the trustee negotiated and moved the Court to approve a settlement of the Nordstrom Claim without participation of (or prior consent by) the Firm. *See* ECF No. 35 ("Proposed Settlement"). The Proposed Settlement—jointly filed by Defendants and the trustee—asks the Court to approve a settlement of the Nordstrom Claim for $105,000 pursuant to Bankruptcy Rule 9019(a). *See id.* at 3. The Firm objected to the Proposed Settlement, arguing that the trustee and Nordstrom settled a claim purportedly worth between $500,000 and $1.5 million for far less. *See* ECF No. 44.

### III. Discussion

In summary, the Court denies approval of the Proposed Settlement because it is not "fair and equitable." ***Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson***, 390 U.S. 414, 440–41 (1968); *see also* FED. R. BANKR. P. 9019(a). A bankruptcy court has wide discretion to approve or deny a settlement proposed by a trustee. *See id.*; *see also **Nellis v. Shugrue***, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing ***Sec. & Exch. Comm'n v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)***, 960 F.2d 285, 293 (2d Cir. 1992)) ("The experience and knowledge of the bankruptcy court judge is of significance in

---

[3] This arrangement did not account for the Debtors' subsequent claim of exemption. If the parties were to negotiate a similar arrangement, they would need to account for $23,675.00 of exempt property in light of the Debtors' now-unobjected-to claim of exemption. *See* ECF No. 62 (*Order Dismissing Objection [to claim of exemption] as Withdrawn*).

5

assessing the propriety of the settlement."). But the Fifth Circuit instructs courts to do so "only when the settlement is fair and equitable and in the best interest of the estate." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995) (citing *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). To determine whether a settlement is fair and equitable, courts compare the terms of the compromise with the likely rewards of litigation, by evaluating:

- (1) the probability of success in litigating the claim subject to settlement, considering the attendant uncertainties in fact and law;
- (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay, if any, to be encountered in the matter of collection;
- (3) the best interests of the creditors, with proper deference to their reasonable views;
- (4) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion; and
- (5) all other factors bearing on the wisdom of the compromise.

*Cajun Elec. Power Coop., Inc. v. Central La. Elec. Co. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997) (citing *Foster Mortg.*, 68 F.3d at 917); *Jackson Brewing*, 624 F.2d at 602.

As counsel for Nordstrom argues, a court need not "conduct a mini-trial to determine the probable outcome of any claims waived in the settlement." *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015) (internal citation omitted). Instead, the court is to "canvas the issues" to see if the settlement falls "below the lowest point in the range of reasonableness." *ARS Brook, LLC v. Jalbert (In re ServiSense.com, Inc.)*, 382 F.3d 68, 72 (1st Cir. 2004).

But while a bankruptcy court should not hold a full-blown trial on the merits, it must "apprise [itself] of the relevant facts and law so that [it] can make an informed and intelligent

decision" on whether the settlement proposed is fair and equitable to parties in interest. *Age Ref.*, 801 F.3d at 541 (alterations in original) (quoting *Cajun Elec. Power Coop.*, 119 F.3d at 356); *see also* **LaSalle Nat'l Bank v. Holland (*In re Am. Reserve Corp.*)**, 841 F.2d 159, 163 (7th Cir. 1987). In other words, the court must do more than "rubber stamp" a settlement. *See Nellis*, 165 B.R. at 122 ("The bankruptcy judge is ultimately responsible for an unbiased and informed assessment of a settlement's terms."); **Cousins v. Pereira (*In re Cousins*)**, No. 09 Civ. 1190(RJS), 2010 WL 5298172, at *4 (S.D.N.Y. Dec. 22, 2010) (holding that "[trustee's] opinions are not to be automatically accepted as reasonable" and that the "bankruptcy court must make independent determinations in approving a settlement").

Applying those standards here, the Court has canvassed the applicable facts and law and finds that the Proposed Settlement does not adequately account for the strong probability of success on the merits if the Nordstrom Claim were to proceed in arbitration. Before the bankruptcy case was reopened, the Firm undertook a full investigation, extensive discovery, and significant briefing in preparation for the arbitration. *See* ECF No. 44, p. 11. The Firm has demonstrated the strong factual basis of the Nordstrom Claim to this Court: in addition to the basic facts of a slip and fall case (i.e., wet surface at premises, plaintiff slips, falls, and is injured as a result), the Firm provided the affidavit of a fact witness, whose testimony supports a finding that Nordstrom had notice of the dangerous condition. According to that affidavit, every time it rained, pipes at the store leaked and water pooled in a specific area of the store, and Nordstrom had consistently told janitorial staff to clean that spot in the past. *See* Firm Ex. E, p. 11. The Firm thus asserted high confidence that Ms. Diaz could prevail on the issue of liability. The Firm also estimated damages. According to the Firm, Ms. Diaz has "excellent facts for proving damages" of at least $367,828.87, representing her actual medical expenses. ECF No. 44, p. 12. Indeed, the Firm provided a well-

supported estimate of its proposed settlement figure closer to $750,000. *See id.*

The Firm also outlined the law relevant to the Nordstrom Claim. For example, in a premises liability case resulting from a slip and fall at work, where the defendant-employer does not subscribe to the Texas Workplace Compensation Fund, Texas law prevents the employer from asserting a defense of the employee's contributory negligence. *See* TEX. LAB. CODE § 406.033(a)(1); *see also* ECF No. 44, p. 12. Even without a full legal analysis, the Court finds this statute persuasive because it increases the likelihood of probable success if the Claim is pursued.

By contrast, the trustee relies on general statements to support settlement generally, without any evidence as to the propriety of this settlement for this amount. Certainly, as counsel for the trustee told this Court, "[c]ompromises are favored in bankruptcy." *See* ECF No. 35, p. 4 (citing ***Myers v. Martin (In re Martin)***, 91 F.3d 389, 393 (3d Cir. 1996) (quoting in turn 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. Rev. 1993))). The reason for this policy, however, is to "minimize litigation and expedite the administration of a bankruptcy estate." *Martin*, 91 F.3d at 393. But that policy concern does not carry as much weight in this case because the estate has already been administered. All that remains is liquidation of this Claim; that process, even if it results in litigation in arbitration, does not require any trustee action beyond approving the employment of the Firm and reviewing any settlement proposed.

In addition, to the extent that this settlement does facilitate expeditious administration of the remaining claim, such benefits are outweighed by the large discrepancy between the potential significant recovery if the case were to proceed and the $105,000 Proposed Settlement amount. This Court recognizes that there are outstanding legal and factual issues that must be litigated and that recovery against Nordstrom in arbitration is not certain. Nevertheless, the Firm presented

8

evidence to support its confidence in the "exceptional" nature of Ms. Diaz's Claim. *See* ECF No. 44, p. 13; *see also* Firm Ex. E–F. By contrast, Nordstrom presents no factual evidence to refute liability or damages beyond claiming that the injuries were preexisting.[4]

Likewise, the trustee presents no evidence as to how or why $105,000 is a reasonable number for settlement. As the Firm pointed out, most of the trustee's motion to approve the settlement contains generalizations and legal conclusions. *See* ECF No. 35, pp. 5–7. Thus, when comparing the Firm's intensive investigation into both legal and factual issues to the figure proposed by the trustee, the second factor (i.e., complexity and likely duration of litigation) and third factor (i.e., best interest of creditors) also weigh against the Proposed Settlement—or at least do not support the trustee's argument to approve it.

Finally, the Court finds that the fourth factor—whether the settlement was the result of arms-length negotiations—is neutral. On the one hand, the Firm argues that the trustee played "fast and loose" by lulling the Firm into preparing documents in anticipation of retaining the Firm, but then the trustee pushed a settlement through as quickly as possible and squeezed out the Firm. ECF No. 44, p. 14. On the other hand, the trustee asserts that he truly intended to hire the Firm at first but changed course when Nordstrom put forth a sum-certain Proposed Settlement. Even though the Proposed Settlement is much lower than the Firm and this Court would anticipate, there is no evidence of collusion, impropriety, or a lack of arms-length negotiations. Rather, it appears that the trustee wanted to settle so he could disburse the $105,000 and then re-close the case as soon as possible.

---

[4] In pleadings and at the hearing on the Proposed Settlement, Nordstrom and the trustee raised the Debtors' lack of standing and limitations as possible defenses to be raised at the arbitration. At that same hearing, however, the trustee withdrew his objection to the Debtors' claimed exemption in a portion of the Nordstrom Claim. The time to object to such exemptions has long since passed. Thus, although the Court does not make a finding on standing or limitations, the Court does note that its canvas of the issues revealed that Nordstrom will face an uphill battle against the trustee in arbitration. *See* **Reed v. City of Arlington**, 650 F.3d 571 (5th Cir. 2011) (en banc).

## CONCLUSION

In conclusion, the Court denies approval of the Proposed Settlement because it is not fair and equitable. The parties are free to propose an alternative settlement, which this Court will review under the same standards outlined above. To be clear, bankruptcy courts—including this Court—do favor settlements, but this settlement failed to account for a probability of success in pending arbitration and resulted in a low settlement figure. Such a settlement would not only adversely affect the Firm but also—and more importantly—adversely affect recovery by the estate's other creditors. Accordingly, the Court will deny approval of the Proposed Settlement. A separate order will be entered to that effect.

# # #